UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| BEATRICE OTIENO, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. G-10-262 |
| | § | |
| COLLEGE OF THE MAINLAND, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

**I.**

Before the Court is the defendant's, College of the Mainland, motion for summary judgment (Doc. No. 42), and the plaintiff's, Beatrice Otieno, response (Doc. No. 51). The Court has reviewed the motion in light of the pronouncement at docket call that the sole issue remaining before the Court is the plaintiff's "due process" claim, and determines that the issue raises a question of law and can be resolved on undisputed facts. The Court, now having reconsidered all matters, determines that the defendant's motion is meritorious and should be granted.[1]

**II.**

The essential facts underlying the plaintiff's claim are undisputed. The plaintiff enrolled in the nursing program at College in the fall of 2008. At the time of enrollment, the plaintiff received a copy of the Nursing Student Handbook, which sets out the requirements for successfully completing the program and establishes the steps for challenging an unfavorable grade, among other rules and rights. It is undisputed that the plaintiff received the Handbook.

---

[1] The Court previously denied the defendant's motion for summary judgment. In light of the delay in the trial of this case and the announcement at docket call, the Court *sua sponte* withdraws its Order denying the defendant's motion.

The plaintiff also received a copy of the revised policy, issued April 8, 2009, addressing issues concerning "pass/fail assignments." In July of 2009, the plaintiff enrolled in a course entitled "Clinical Nursing III" and, thereby, received the clinical course packet. The clinical course packet specifically addressed deduction of points from a clinical grade when an assignment is turned in late. In sum, a student should expect a two (2) point deduction from her final grade for each day that a required assignment is late.

In July of 2009, the plaintiff was assigned to observe a daycare, called the "Daycare Implementation Project." According to the professor, to whom the plaintiff and others reported the plaintiff was to turn in a daycare paper addressing her experiences and observations. The paper was due on July 13; however, the plaintiff did not turn in her paper until July 31, and only after the professor called and emailed the plaintiff about her tardiness. As a result of late compliance, the plaintiff's grade of 97 was reduced to 67, a failing grade. The plaintiff was dismissed from the program. Contemporaneously, she sought to meet with her professor and obtain a grade change.

The plaintiff met with two professors and the Course Facilitator on August 14 about the grade. One of the professors was the same professor responsible for the daycare portion of the course. A few days later, the plaintiff met with the course professor and the Director of Nursing. During the meeting, the plaintiff was provided a copy of the April 8, 2009, grade policy clarification that addressed grade reductions. They did not agree with the plaintiff's position, and the grade was not changed. On August 19 and August 25, the plaintiff met with the College ombudsperson responsible for grade appeals. These meetings among the plaintiff, the ombudsperson, the Director of Nursing, and the Dean of Allied Health and Continuing Education Programs did not change the plaintiff's outcome. The ombudsperson reported back to the

2

plaintiff, informing her that the policy would not be altered and that the grade would remain unchanged.  In October, the plaintiff met again with the ombudsperson and with the Dean, who advised the plaintiff that she might file a formal appeal.  The record reflects that no formal (written) appeal was filed by the plaintiff, even though she submitted a written statement to the College after October 30.

The plaintiff filed suit against the defendant in July of 2010, asserting a violation of her substantive and procedural "due process" rights and for racial discrimination.  At docket call, the plaintiff announced that she would not pursue her race discrimination claim, but only her "due process" claim.

**III.**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at 248.  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted.  *Id.* at 249-50; *see also Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004).

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 - 87 (1986); *Adams v.*

*Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006). Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial." Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and *Adams*, 465 F.3d at 164. To sustain the burden, the nonmoving party must produce evidence admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact. *Anderson*, 477 U.S. at 250-51; 255; *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

## IV.

The plaintiff correctly states the law that governs substantive and procedural "due process" claims. A claim of a property interest under the Fourteenth Amendment requires that a claimant have more than an abstract need or desire or unilateral expectation of an interest but must reveal a legitimate basis for entitlement. *See Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Hence, property interests are not created by the federal Constitution, but arise from statutes, ordinances, rules, contracts and/or mutual and explicit understandings. *Roth,* 408 U.S. at 577. Therefore, a plaintiff must establish that her dismissal from the nursing program, for example, deprived her of a property interest. *See Bd. Of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 82 (1978). In the case at bar, the evidence fails to establish that the plaintiff was deprived of a property interest; therefore, the plaintiff's claim of a "due process" violation fails.

4

The plaintiff admits that *Horowitz* sets forth the legal standard and analysis that courts follow in reviewing the dismissal of a student from a college program. The process is described as an "informed give-and-take" process that permits the student and the school officials to state their respective positions and, if possible, resolve any disputes. *Horowitz*, 435 U.S. at 86. However, courts are to recognize that the student does not, by enrollment, acquire a right to a passing grade or graduation and that actions taken by a college contrary to the student's expectations do not, necessarily, give rise to a "due process" violation or create a property right.

In the case at bar, the plaintiff was provided a Handbook that outlined the steps for challenging an undesirable grade. While the plaintiff failed to formally request a hearing before the College's Standing Appeals Committee, the evidence is undisputed that the plaintiff's dispute about her grade was addressed at every level. The evidence shows that the plaintiff met with the professor responsible for the daycare portion of the clinic. As well, she met with the Course Facilitator and the Department Chair/Director of the Nursing Program. The plaintiff also met with the Dean of Allied Health, the Director of Nursing and several other professors and college officials. On each occasion, the outcome did not change. Finally, the plaintiff met with the ombudsperson, who would process any appeal. However, the plaintiff never formally requested an appeal and there is no evidence that Standing Committee would not be constituted of some of the same College officials. Because there is no evidence that the plaintiff made a written request for an appeal, the plaintiff's claim that she was denied an opportunity to present her grade appeal to a Standing Appeals Committee is unmeritorious, as a matter of law. Even assuming that the plaintiff had a property interest in receiving a formal appeal, that right was forfeited when she failed to request it. Treating the plaintiff's letter to the College after October 30 as a formal appeal, the evidence supports the conclusion that the plaintiff received sufficient "due process"

through October 30, and that further review was unnecessary. *Horowitz*, 435 U.S. at 82. Moreover, the Court is convinced that the manner of the proceedings was not arbitrary or capricious, but was conducted in a manner that protected the plaintiff's right to be heard while preserving the College's right to enforce its policies.

It is therefore ORDERED that the defendant's motion for summary judgment be, and it is hereby, GRANTED.

SIGNED at Houston, Texas this 30th day of April, 2012.

_____
Kenneth M. Hoyt
United States District Judge